# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SMITTY'S SUPPLY, INC. | CIVIL ACTION |
| VERSUS | NO: 16-13396 C/W 17-4711 C/W 17-17-7191 |
| LINDSAY MORGAN HEGNA | SECTION: "S" (3) |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Smitty's Supply, Inc.'s **Motion for Partial Summary Judgment Regarding Stephen Kelley's Breach of Contract for Unauthorized Communications Following his Resignation** (Rec. Doc. 238) is **DENIED**.

**IT IS FURTHER ORDERED** that Smitty's Supply, Inc.'s **Motion for Partial Summary Judgment Regarding Regarding Lindsey Morgan Hegna's Breach of Contract for Communications with Marubeni** (Rec. Doc. 240) is **DENIED**.

**IT IS FURTHER ORDERED** that Stephen D. Kelley's and Lindsey Morgan Hegna's **Motion for Summary Judgment on Smitty's Supply, Inc.'s "Marubeni" Claims** (Rec. Doc. 246) is **GRANTED** insofar as the claims for intentional interference with contract, and the abuse of rights claim as to Lindsay Morgan Hegna; and **DENIED** insofar as the abuse of rights claim as to Stephen D. Kelley, and the request for a finding of bad faith.

## BACKGROUND

Stephen D. Kelley and Lindsey Morgan Hegna are former employees of Smitty's Supply, Inc. ("Smitty's"), a manufacturer and distributor of oils, lubricants, and related products. Kelley

worked as Chief Financial Officer from February 2014 through May 2016, and Hegna worked as Vice President of Sales from July 2014 to March 2016. Both were hired with a mandate which included helping to increase the company's valuation prior to a sale of the company. During both their tenures, Smitty's was engaged in negotiating with a Japanese company, Marubeni, for a sale of 50% of Smitty's to Marubeni. Under a Letter of Intent between Marubeni and Smitty's which expired by its terms on July 31, 2016, Marubeni proposed to purchase a 50% stake in Smitty's for $225,000,000 less the value of Smitty's debt at closing, with an option to acquire an additional 25% interest in the company. Kelley and Hegna worked closely with Marubeni representatives in connection with Marubeni's due diligence.

Following their separation from Smitty's, Hegna and Kelley each filed suit against Smitty's[1] seeking recovery of compensation allegedly owed to them by Smitty's. In the course of discovery, Hegna and Kelley disclosed communications between themselves, individually, and Marubeni in March 2016 and May 2016, respectively. Both had signed confidentiality agreements with Smitty's, which survived the termination of their employment, that prohibited them from sharing Smitty's confidential information, defined as "information and data in any form related to the Company's financials, payroll records, business and any other Company research, financial information, customer lists, prospect lists, customer contact lists or information, customer pricing data, customer purchasing information, products, designs, methods, know-how, formulae, techniques, systems, processes, software programs, works authorship, projects, plans, proposals or other technical or financial information."

---

[1]Their individual suits have since been consolidated in the present case.

Subsequently, Smitty's filed identical counterclaims against Hegna and Kelley, alleging that Hegna and Kelley breached their confidentiality agreements through their post-employment contact with Marubeni, resulting in Smitty's and Marubeni's failure to consummate the sale. Smitty's also alleged claims for intentional interference with contract and abuse of rights. Smitty's seeks in excess of $450,000,000 in damages.

In the instant motions, Smitty's seeks summary judgment finding that Kelley and Hegna breached their confidentiality agreements. Kelley and Hegna seek summary judgment dismissing the breach of contract claims, and Smitty's claims for intentional interference with contract and abuse of rights. Kelley and Hegna also seek summary judgment finding that Smitty's acted in bad faith in bringing the counterclaims.

## DISCUSSION

### I. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Granting a motion for summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits filed in support of the motion demonstrate that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2509-10 (1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the

outcome of the suit under the governing substantive law." Beck v. Somerset Techs., Inc., 882 F.2d 993, 996 (5th Cir. 1989) (citing Anderson, 106 S.Ct. at 2510).

If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents properly to support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

## II. Breach of Contract

A breach of contract claim brought under Louisiana law has three essential elements: "(1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee." Favrot v. Favrot, 68 So.3d 1099, 1108-09 (La. Ct. App. 2011) (collecting cases). "The plaintiff bears the burden of proof on each element." Id. Smitty's contends that Hegna and Kelley breached their confidentiality agreements, causing the Marubeni purchase to fall through, with resulting damages to Smitty's.

The court finds that if Smitty's establishes that Hegna and Kelley breached a provision of their respective employment agreements, Smitty's has come forth with no evidence that the

4

breach caused Marubeni to refuse to proceed with the purchase, or caused Smitty's any damages. Indeed, Smitty's argument falls into a *post hoc, ergo propter hoc* logical fallacy, contending that Hegna and Kelley communicated with Marubeni after separating from Smitty's, and thereafter, the Marubeni deal was not consummated; therefore, their communications caused the cancellation. However, Smitty's offers no competent evidence to establish a causal connection between these two facts.

To the contrary, record evidence reflects that Smitty's CEO and sole owner Edgar Smith, III, backed out of the Marubeni deal after the parties had "cooled" on the purchase, and further, that Smith did not know why and did not ask why Marubeni lost enthusiasm. Smith admitted that Smitty's and Marubeni's interest in the deal had already "cooled off some" in the first quarter of 2016.[2] In May 2016, Smith stated that "[f]or reasons not related to this litigation," Smitty's "declined Marubeni Corporation's offer to purchase Smitty's Supply, Inc. and its related entities . . . ."[3] He also stated that he terminated the deal because "sometime the first half of '16 or thereabouts" Marubeni sought a larger share of Smitty's than originally proposed and requested that the company invest in capital improvements that Smith did not want to make.[4] Further, Smith had tired of the lengthy due diligence process and the distraction it caused to his employees.[5] While a statement from Marubeni could resolve the question of why their objectives

---

[2] Rec. Doc. 246-3, Smith Tr., at 110:2–19; 222:11–223:5.

[3] Rec. Doc. 246-17, Aff. of E. Smith, III, ¶ 5.

[4] Rec. Doc. 246-3, Smith Tr., 18:16–19:21; 23:18–24:15; 228:1–4.

[5] Id. at 22:9–21; 224:11–226:23 .

5

changed, that has not been provided.

In addition, Smitty's has also failed adequately to support its claim for damages. Smitty's seeks $450,000,000 from Hegna and Kelley despite the fact that the proposed transaction would net the company's sole shareholder less than half that amount. And, while it has not realized the proceeds of any sale, Smitty's still maintains full ownership of the company. Thus, Smith, Smitty's sole shareholder, owns 100% of a $450,000,000 company rather than a 50%, non-controlling interest in a $450,000,000 company. Therefore, Smitty's has failed to establish that it has suffered any actual damages as a result of the complained of communications.

### III. Intentional Interference with Contract

"In Spurney[6], the Louisiana Supreme Court recognized a very narrow cause of action for tortious interference with contracts." Am. Waste & Pollution Control Co. v. Browning-Ferris, Inc., 949 F.2d 1384, 1386 (5th Cir. 1991). In order to prevail on a claim for intentional interference with contract, a plaintiff must establish: "(1) the existence of a contract or a legally protected interest between the plaintiff and the corporation; (2) the corporate officer's knowledge of the contract; (3) the officer's intentional inducement or causation of the corporation to breach the contract or his intentional rendition of its performance impossible or more burdensome; (4) absence of justification on the part of the officer; (5) causation of damages to the plaintiff by the breach of contract or difficulty of its performance brought about by the officer." Spurney, 538 So. 2d at 234.

These requirements for stating a claim have been construed very narrowly. As such,

---

[6] 9 to 5 Fashions, Inc. v. Spurney, 538 So.2d 228 (La.1989).

"Spurney recognized only an action wherein a corporate officer causes *his own corporation* to breach a contract between his own corporation and the plaintiff." Matrix Essential, Inc. v. Emporium Drug Mart, Inc., 756 F. Supp. 280, 284 (W.D. La. 1991), aff'd sub nom. Matrix Essentials, Inc. v. Emporium Drug Mart, Inc., of Lafayette, 988 F.2d 587 (5th Cir. 1993) (emphasis in original)(cited with approval in Am. Waste & Pollution Control Co. v. Browning-Ferris, Inc., 949 F.2d at 1389; see also, Thomas C. Galligan Jr., Contortions Along the Boundary Between Contracts and Torts, 69 TUL. L. REV. 457, 510–11 (1994)(intentional interference claims largely limited to cases in which the defendant is a corporate officer/agent of the breaching party).

Applying these principles, it is clear that Smitty's has failed to state a claim for intentional interference with contract against Hegna or Kelley. Under the mandate of Spurney, Kelly and Hegna would have to have caused their employer to commit a breach. There has been no allegation that the Letter of Intent was breached. Smitty's contends that Kelly and Hegna influenced *Marubeni* to make the deal more burdensome. That is not the posture contemplated by Spurney to state an intentional interference with contract claim, and accordingly, Smitty's has failed to state such a claim.

**IV. Abuse of Rights**

"Abuse of rights is [an] equitable concept that is sparingly applied because it nullifies a party's otherwise enforceable rights." Miller v. Miller, 817 So. 2d 1166, 1171 (La. Ct. App. 2002), writ denied, 827 So. 2d 1154 (La. 2002). It applies in when one of the following criteria is present: "(1) the right has been exercised for the predominant motive of causing harm; (2) there

is no serious or legitimate interest for exercising the right; (3) exercise of the right is against moral rules, good faith, or elementary fairness; or (4) the right is being exercised for a purpose other than that for which it was originally conferred." Id., citing Massachusetts Mut. Life Ins. Co. v. Nails, 549 So.2d 826 (La.1989).

Initially, the court further finds that because Smitty's did not discover the communications by Kelley and Hegna until December 27, 2017, and filed its abuse of rights counterclaims against them on February 9, 2018, they are not barred by Louisiana's one-year prescriptive period for delictual actions.

Smitty's alleges that Hegna and Kelly committed an abuse of rights by speaking with Marubeni about Smitty's "valuable Confidential Information" for the purpose of harming Smitty's, or "in violation of moral rules, good faith and/or elementary fairness."

With repsect to Hegna, the court finds that Smitty's has failed to identify any "Confidential Information" impermissibly shared by Hegna with Marubeni. The agreement defines confidential information as "information and data in any form related to the Company's financials, payroll records, business and any other Company research, financial information, customer lists, prospect lists, customer contact lists or information, customer pricing data, customer purchasing information, products, designs, methods, know-how, formulae, techniques, systems, processes, software programs, works authorship, projects, plans, proposals or other technical or financial information." The court has reviewed all of the evidence presented in support and in opposition to this motion related to Hegna's communications with Marubeni, and finds that there were no improper disclosures in violation of that definition. To the contrary,

8

Hegna expressed a reticence to discuss negative Smitty's affairs related to Kelley's termination. Moreover, she stated her reason for meeting Marubeni representatives for dinner after her termination was "to continue a really good . . . business relationship" with business people involved in the same industry as she who might have potential job leads.[7] At the dinner, she confirmed that she had been terminated from Smitty's and was seeking other employment that would not violate any non-compete obligations she had with Smitty's. She further testified that she had no intention to "talk negatively about Smitty's" and, in fact, did not.[8] Instead, she and the Marubeni representatives talked about Hegna's "family and [her] kids."[9]

Following the dinner, Marubeni contacted Hegna one additional time to inquire about Kelley's resignation from Smitty's.[10] Hegna responded that she did not know why Kelley resigned and directed Marubeni to speak with him directly.[11]

With respect to Kelley, the record is less clear. It appears from the testimony of Suzan Jagger, a principal in Jagger Advisory, a consultancy that represented and assisted Marubeni in conducting due diligence for the Smitty's transaction, that Kelley may have impermissibly discussed Smitty's "projects, plans, or proposals" as contemplated by the agreement after his termination. Whether he did is a question of fact for the jury, and summary judgment on the

---

[7] Rec. Doc. 246-7, Hegna Tr., at 16:1–11.

[8] Id. at 16:17–19; 64:17–25; 65:7–66; 79:3–12; 80:3–18.

[9] Id. at 63:14–63:16.

[10] Id. at 13:24–14:4.)

[11] Id.

9

abuse of rights claim vis-a-vis Kelley is inappropriate at this juncture.

**V. Bad Faith Claim**

Kelley and Hegna also seek a summary judgment finding that Smitty's Marubeni claims were asserted in bad faith based on "wild and wholly unsubstantiated speculation that bore no relation to Smitty's actual involvement with Marubeni." The court declines to make such a finding.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Smitty's Supply, Inc.'s **Motion for Partial Summary Judgment Regarding Stephen Kelley's Breach of Contract for Unauthorized Communications Following his Resignation** (Rec. Doc. 238) is **DENIED**.

**IT IS FURTHER ORDERED** that Smitty's Supply, Inc.'s **Motion for Partial Summary Judgment Regarding Lindsey Morgan Hegna's Breach of Contract for Communications with Marubeni** (Rec. Doc. 240) is **DENIED**.

**IT IS FURTHER ORDERED** that Stephen D. Kelley's and Lindsey Morgan Hegna's **Motion for Summary Judgment on Smitty's Supply, Inc.'s "Marubeni" Claims** (Rec. Doc. 246) is **GRANTED** insofar as the claims for intentional interference with contract, and the abuse of rights claim as to Lindsay Morgan Hegna; and **DENIED** insofar as the abuse of rights claim as to Stephen D. Kelley, and the request for a finding of bad faith. Accordingly, Smitty's claims for breach of contract and intentional interference with contract as to Kelley and Hegna are **DISMISSED**; and Smitty's claim for abuse of rights as to Hegna is **DISMISSED**; Kelley and

Hegna's claim for bad faith damages is **DENIED**.

New Orleans, Louisiana, this  6th   day of March, 2019.

                                                        **MARY ANN VIAL LEMMON**
                                              **UNITED STATES DISTRICT JUDGE**