UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SMITTY'S SUPPLY, INC. | CIVIL ACTION |
| VERSUS | NO: 16-13396 C/W 17-4711 C/W 17-17-7191 |
| LINDSAY MORGAN HEGNA | SECTION: "S" (3) |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Stephen D. Kelley's **Motion for Partial Summary Judgment on Claim for Severance Pay** (Rec. Doc. 338) is **GRANTED** insofar as the court finds that the term "good reason" is not ambiguous, and **DENIED** insofar as the court finds that fact issues preclude summary judgment at this time;

**IT IS FURTHER ORDERED** that Smitty's Supply, Inc.'s ("Smitty's") **Motion for Partial Summary Judgment Concerning Severance Pay** (Rec. Doc. 340) is **DENIED.**

## BACKGROUND

Plaintiff Stephen D. Kelley worked for Smitty's as Chief Financial Officer from February 2014 through his resignation in May 2016. Prior to acceptance of his employment, Kelley negotiated his salary and benefits with Edgar Smith, the sole owner of Smitty's. Their agreement was memorialized in email exchanges dated February 2 and 3, 2014. It provided in pertinent part: "I will be provided 1.5 years lump sum severance pay to be calculated as follows: (base pay [currently $500,000] + prior year performance bonus and estimated current year incentive pay [if applicable]) [multiplied by] 1.5; should my termination be terminated by employer without cause

or by employee with good reason at any time." In addition (among other things), the agreement provided that Kelley would participate in a bonus incentive plan at a level of 17.5%. To this, Smith responded "Your trust is well placed my friend, I am excited and agree in principal to all below as per our conversation yesterday."

After Kelley had worked at Smitty's for about six months, his base salary was lowered by 60% and his participation in the bonus incentive plan was reduced from 17.5% to 10%. He contends that while unhappy with these reductions, he accepted them based upon Smith's representation that he would receive a 5% synthetic equity interest[1] in Smitty's and its affiliated companies that would vest over time. Smith charged Kelley with developing the plans to provide the synthetic equity interest.

Kelley resigned his employment in May 2016. He alleges that his resignation was for good reason, namely, the reduction of his salary and incentive bonuses. In so arguing, he claims that he agreed to forgo a substantial portion of his base salary and incentive bonuses based on assurances that they would be made up through the synthetic equity interest or other deferred compensation, and that (for reasons not relevant to the instant motion), he had come to believe that Smitty's did not intend to fulfill those promises. Kelley also alleges that he was concerned about what he considered unethical or unlawful business practices. Thus, he argues he is entitled to summary judgment enforcing the severance pay provision in his agreement with Smitty's.

Smitty's, in contrast, argues first, that the emails excerpted above do not constitute a

---

[1] As contemplated by the parties in this case, a synthetic equity interest means an economic interest in the company via the Phantom Stock and Stock Appreciation Rights Plan, without a legal ownership of an equity interest, which would include voting rights.

2

meeting of the minds because "good reason" is an ambiguous term since it is not specifically defined in the agreement. Smitty's also argues that Kelley resigned not for good reason, but because he recognized that he was about to be terminated for poor performance.

## APPLICABLE LAW

*Summary Judgment Standard*

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Granting a motion for summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits filed in support of the motion demonstrate that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2509-10 (1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." Beck v. Somerset Techs., Inc., 882 F.2d 993, 996 (5th Cir. 1989) (citing Anderson, 106 S.Ct. at 2510).

If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If

the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents properly to support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

*Contract Interpretation*

The interpretation of an unambiguous contract is an issue of law for the court. Amoco Prod. Co. v. Texas Meridian Resources Exploration Inc., 180 F.3d 664, 668 (5th Cir.1999). Interpreting a contract is determining the common intent of the parties. La. Civ. Code art. 2045. "Such intent is to be determined in accordance with the plain, ordinary, and popular sense of the language used, and by construing the entirety of the document on a practical, reasonable and fair basis." Amitech U.S.A., Ltd. v. Nottingham Const. Co., 57 So.3d 1043, 1057–58 (La. Ct. App. 2010)."When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. "The words of a contract must be given their generally prevailing meaning. Words of art and technical terms must be given their technical meaning when the contract involves a technical matter." La. Civ. Code art. 2047. "Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract." La. Civ. Code art. 2048. Each provision of a contract must be interpreted in light of the other provisions "so that each is given the meaning suggested by the contract as a whole." La. Civ. Code art. 2050.

4

## APPLICATION OF LAW TO FACTS

The court finds that the term, "good reason" for resignation, is not ambiguous as used in the context of Kelley's employment agreement. The intent of the agreement is clear that severance is due if Kelley were to leave employment with Smitty's for a good reason, as understood "in accordance with the plain, ordinary, and popular sense of the language used, and by construing the entirety of the document on a practical, reasonable and fair basis." Amitech, 57 So.3d at 1057–58 (La. Ct. App. 2010). The plain language implies that the reason must be more than mere convenience, but rather for a reason that an average, but not over-sensitive, individual would determine he or she has cause to resign employment. The term "good reason" is analogous to the term "good cause," when that term is used in an employment contract.

> "Good cause" has been defined as a cause connected with working conditions which affects the employee's ability to continue work or the benefits the employee may receive from his employer either upon continuation of work or retirement. McGraw v. Director of Postal Data Center, 319 So.2d 797 (La. App. 1st Cir.1975). Mere dissatisfaction with working conditions does not constitute "good cause" unless the dissatisfaction is based on discriminatory, unfair or arbitrary treatment, or is based upon a substantial change in wages or working conditions from those in force at the time the claimant's position began. DeCote v. La. Office of Employment Sec., etc., 401 So.2d 1087 (La. App. 3d Cir.1981); McGinnis v. Moreau, 149 So.2d 188 (La. App. 3d Cir.1963). Resignation by an employee merely because he is dissatisfied with his compensation does not constitute good cause for leaving his employment. Salvant v. Lockwood, 400 So.2d 311 (La. App. 4th Cir.1981). However, a resignation as a result of a substantial decrease in earnings does constitute "good cause" for leaving the employment. Robertson v. Brown, 139 So.2d 226 (La. App. 1st Cir.1962).

Nason v. Louisiana Dep't of Employment Sec., 475 So. 2d 85, 87 (La. Ct. App.), writ denied sub nom. Nason v. Louisiana Dep't of Sec., 478 So. 2d 149 (La. 1985).

The court finds that giving the term "good reason" its generally prevailing meaning

5

within the context of an employment agreement, the severance provision is not ambiguous, and that a unilateral reduction in salary by more than half would constitute good reason for Kelley to resign. However, the court also finds that issues of material fact remain as to whether the diminution of salary, or the reasons advanced by Smitty's, were the motivating factor(s) in Kelley's resignation. Therefore,

**IT IS HEREBY ORDERED** that Stephen D. Kelley's **Motion for Partial Summary Judgment on Claim for Severance Pay** (Rec. Doc. 338) is **GRANTED** insofar as the court finds that the term "good reason" is not ambiguous, and **DENIED** insofar as the court finds that fact issues preclude summary judgment at this time;

**IT IS FURTHER ORDERED** that Smitty's Supply, Inc.'s **Motion for Partial Summary Judgment Concerning Severance Pay** (Rec. Doc. 340) is **DENIED**.

New Orleans, Louisiana, this __6th__ day of March, 2019.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**